# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 6, 2014

Lyle W. Cayce
Clerk

No. 13-40714

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

ANDRES SANCHEZ-ESPINAL,

Defendant– Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and WIENER and COSTA, Circuit Judges.

CARL E. STEWART, Chief Judge:

Plaintiff-Appellant Andres Sanchez-Espinal appeals his sentence of twenty-four months imprisonment and two years of supervised release for being unlawfully present in the United States after deportation following a felony conviction, in violation of 8 U.S.C. § 1326(b)(1). Specifically, he challenges the district court's imposition of an eight-level sentence enhancement for a prior conviction of an aggravated felony. For the reasons herein, we AFFIRM.

No. 13-40714

## I.

In February 2013, a grand jury in the Southern District of Texas charged Sanchez-Espinal with one count of being unlawfully present in the United States after deportation following a felony conviction, in violation of 8 U.S.C. § 1326(b)(1).  On March 14, 2013, without a plea agreement, Sanchez-Espinal pleaded guilty to the count alleged in the indictment.

The Presentencing Investigation Report ("PSR") established Sanchez-Espinal's base offense level at eight, pursuant to United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") § 2L1.2(a).  Eight levels were added pursuant to § 2L1.2(b)(1)(C) due to Sanchez-Espinal's 2009 New York conviction of aggravated criminal contempt in violation of § 215.52 of the New York Penal Law, which the probation office characterized as an aggravated felony conviction.  The PSR subtracted three levels for acceptance of responsibility, placing Sanchez-Espinal at offense level 13.  Sanchez-Espinal had a criminal history score of seven, placing him in criminal history category IV.  The resulting calculation advised a Guidelines range of 24 to 30 months.

According to New York court documents, in January 2009, Sanchez-Espinal was charged with aggravated criminal contempt, in violation of New York Penal Law § 215.52.  Subsection (1) of the law provides that a person commits aggravated criminal contempt when:

> in violation of a duly served order of protection, or such order of which the defendant has actual knowledge because he or she was present in court when such order was issued, or an order of protection issued by a court of competent jurisdiction in another state, territorial or tribal jurisdiction, he or she intentionally or recklessly causes physical injury or serious physical injury to a person for whose protection such order was issued.

N.Y. Penal Law § 215.52(1).  This charge, which resulted in conviction, arose from events in which Sanchez-Espinal entered the apartment of and

injured a woman named Maria Colon after the Yonkers City Criminal Court had issued an order of protection requiring Sanchez-Espinal to stay away from Colon and to refrain from assaulting, stalking, harassing, menacing, intimidating, threatening, or endangering her.

Sanchez-Espinal objected to the PSR in the instant case on the basis that this past § 215.52 conviction was not an aggravated felony because the charging instrument alleged that he acted intentionally and recklessly, no violence is required to commit aggravated criminal contempt, and any injury, no matter how serious, suffices for a conviction. At the sentencing hearing, Sanchez-Espinal confirmed that his only objection was that violation of § 215.52 is not an aggravated felony. He further stated that "there is no way to decipher what he was actually found guilty of, whether he acted intentionally or recklessly, or if he actually caused physical injury." He later added that merely harassing or annoying someone could be a basis for a conviction under § 215.51, to which the prosecutor responded that the statute at issue here is § 215.52.

The district court determined that Sanchez-Espinal's conviction under § 215.52 constituted an aggravated felony and a crime of violence under 18 U.S.C. § 16(b). The district court explained that it came to this decision because the indictment accused Sanchez-Espinal of acting intentionally and because § 215.52 requires the knowing violation of a court order and the infliction of physical injury. The district court sentenced Sanchez-Espinal to a term of 24 months imprisonment, to be followed by two years of supervised release. Sanchez-Espinal timely appealed.

No. 13-40714

## II.

On appeal Sanchez-Espinal argues that the district court committed reversible error in classifying his 2009 New York conviction as an aggravated felony justifying an eight-level enhancement under the Sentencing Guidelines. First, he argues that the record evidence does not establish that his previous conviction was for aggravated criminal contempt under § 215.52 rather than for criminal contempt under § 215.51. Second, he argues that, even assuming he was convicted under § 215.52, the state-court documents do not establish which subsection he violated; only subsection (1) could possibly be an "aggravated felony" and a "crime of violence." Third, he argues that, even if he was convicted under § 215.52(1), a violation of that subsection should not qualify as an "aggravated felony" or a "crime of violence." We will address these arguments in turn.

## A.

We will address Sanchez-Espinal's first two arguments together, as they both challenge the finding that he was convicted under § 215.52(1). Neither was properly preserved below. Parties must raise objections that are specific enough to put the district court on notice of potential issues for appeal and allow the district court to correct itself. *See United States v. Hernandez-Martinez,* 485 F.3d 270, 272–73 (5th Cir. 2007). "[O]bjections that are too vague are reviewed on appeal for plain error. . . ." *United States v. Dominguez-Alvarado*, 695 F.3d 324, 327–28 (5th Cir. 2012). To establish plain error, Sanchez-Espinal must show: "(1) an error; (2) that is clear and obvious; and (3) that affected his substantial rights." *Hernandez-Martinez*, 485 F.3d at 273. Even if these three conditions are met, "this court can exercise its discretion to notice the forfeited error only if the error seriously affects the fairness,

integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted).

Sanchez-Espinal objected to the PSR solely on the basis that § 215.52 is not an aggravated felony. He re-urged this objection at the sentencing hearing. He did not argue that he might actually have been convicted of non-aggravated criminal contempt under § 215.51, or that there was any doubt as to which subsection he violated. Although he mentioned that harassing or annoying someone could be a basis for a conviction under § 215.51, he did not elaborate on this statement and was quickly reminded by the prosecutor that the statute at issue was § 215.52, not § 215.51—a reminder that he did not contradict. Thus, the objections raised to the PSR and at the sentencing hearing did not put the district court on notice that Sanchez-Espinal wished to argue that the documents did not indicate he was convicted under § 215.52 or that he might have been convicted under a subsection of that statute that did not qualify him for an aggravated felony enhancement. Accordingly, our review is for plain error only.

There were multiple state-court documents submitted during sentencing indicating that Sanchez-Espinal was charged with, pleaded guilty to, and was convicted of aggravated criminal contempt in violation of § 215.52. These include the state court felony complaint, the state court information, and the state court Uniform Sentence & Commitment. Thus, we conclude that the district court committed no error—let alone plain error—in finding that Sanchez-Espinal was charged and convicted under § 215.52.

We next consider whether the district court committed plain error by finding that Sanchez-Espinal was specifically charged and convicted under subsection (1) of § 215.52. "If a statute contains multiple, disjunctive subsections, courts may look beyond the statute to certain conclusive records

made or used in adjudicating guilt in order to determine which particular statutory alternative applies to the defendant's conviction." *United States v. Bonilla-Mungia*, 422 F.3d 316, 320 (5th Cir. 2005) (internal quotation marks omitted). "These records are generally limited to the 'charging document, written plea agreement, transcript of the plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented.'" *Id.* (quoting *Shepard v. United States*, 544 U.S. 13, 16 (2005)). This method of "identifying the defendant's crime of conviction" is called the modified categorical approach. *Contreras v. Holder*, 13-60407, 2014 WL 2565670, at *3 (5th Cir. June 6, 2014). Here, this approach is appropriate because N.Y. Penal Law § 215.52 is a statute made up of three separate subsections, and "contains multiple crimes set forth as alternative elements." *Id.* (citing *Descamps v. United States*, 133 S.Ct. 2276, 2281 (2013)); *see also* N.Y. Penal Law § 215.52.

The language in the information closely tracked the language of subsection (1) of § 215.52. It alleged that Sanchez-Espinal, "in violation of a duly served order of protection, or such order of which the defendant had actual knowledge because the defendant was present in court when such order was issued, did intentionally and recklessly cause physical injury or serious physical injury to a person for whose protection such order was issued." As we already noted, § 215.52(1) states that "[a] person is guilty of aggravated criminal contempt when . . . in violation of a duly served order of protection . . . he or she intentionally or recklessly causes physical injury or serious physical injury to a person for whose protection such order was issued." N.Y. Penal Law § 215.52(1). A charging information that closely tracks the language of a particular statute can establish that the defendant was charged under that section. *See Larin-Ulloa v. Gonzales*, 462 F.3d 456, 468 (5th Cir.

2006). Thus, we hold that the district court did not err in finding that Sanchez-Espinal was charged and convicted of a violation of N.Y. Penal Law § 215.52(1).

**B.**

We next address whether a conviction under N.Y. Penal Law § 215.52(1) constitutes an aggravated felony warranting an eight-level sentencing increase under the Guidelines. Sanchez-Espinal objected to the classification of his prior offense as an aggravated felony in the district court. Our review is de novo. *See United States v. Sanchez-Ledezma*, 630 F.3d 447, 449 (5th Cir. 2011).

Section 2L1.2(b)(1)(C) of the Guidelines provides an eight-level adjustment for a defendant who has been deported following a conviction of an aggravated felony. That section states that "aggravated felony" has the meaning given that term in 8 U.S.C. § 1101(a)(43). U.S.S.G. § 2L1.2 cmt. n.3(A). Section 1101(a)(43)(F) specifies that an aggravated felony is "a crime of violence" that carries a prison term of at least one year. 8 U.S.C. § 1101(a)(43)(F). "Crime of violence" is defined by reference to section 16 of Title 18. *Id.*

Section 16 defines "crime of violence" as:

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.

The district court concluded that Sanchez-Espinal's New York conviction under § 215.52 was a crime of violence under subsection (b) of § 16. Sanchez-Espinal challenges the finding that the New York crime of aggravated criminal

contempt is an "offense . . . that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *See* 18 U.S.C. § 16(b).

A conviction under § 215.52(1) requires, in relevant part, that the defendant "intentionally or recklessly cause[] physical injury or serious physical injury" to someone for whose protection an order had previously been issued against the defendant. N.Y. Penal Law § 215.52(1). Section 215.52(1) may qualify under § 16(b) as a crime of violence only if it "always entail[s] a substantial risk that physical force . . . may be used"—even if it is possible to commit a violation without the use of physical force. *Rodriguez v. Holder*, 705 F.3d 207, 213 (5th Cir. 2013) (internal quotation marks and citation omitted). "When analyzing the operative phrase 'substantial risk,' it is not necessary that the risk must occur in every instance; rather a substantial risk requires a strong probability that the event, in this case the application of physical force during the commission of the crime, will occur." *Id.* (internal quotation marks omitted) (alterations omitted); *see also United States v. Landeros-Gonzales*, 262 F.3d 424, 427 (5th Cir. 2001). The Supreme Court has explained that § 16(b) "covers offenses that naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense." *Leocal v. Ashcroft*, 543 U.S. 1, 10 (2004). This "reckless disregard . . . relates not to the general conduct or to the possibility that harm will result from a person's conduct, but to the risk that the use of physical force against another might be required in committing a crime." *Id.*

The Supreme Court in *Leocal* cited burglary as a prime example of a crime that involves a substantial risk of the use of force. 543 U.S. at 10. In that case, it concluded that a DUI was not a crime of violence because "[i]n no ordinary or natural sense can it be said that a person risks having to use

8

physical force against another person in the course of operating a vehicle while intoxicated and causing injury." *Id.* at 11 (internal quotation marks omitted). Relying on *Leocal*, this court held that sexual assault by clergy committed "through exploitation of emotional dependency" "is more similar to a DUI than burglary." *Rodriguez*, 705 F.3d at 213. However, this court has held that there is a substantial risk that physical force will be used in the commission of indecency with a child younger than seventeen, *United States v. Velazquez-Overa*, 100 F.3d 418, 421–22 (5th Cir. 1996), burglary of a habitation, *United States v. Guadardo*, 40 F.3d 102, 103 (5th Cir. 1994), burglary of a nonresidential structure or vehicle, *United States v. Ramos-Garcia*, 95 F.3d 369, 371–72 (5th Cir. 1996) (per curiam), and unauthorized use of a motor vehicle, *United States v. Galvan-Rodriguez*, 169 F.3d 217, 219 (5th Cir. 1999) (per curiam). *See Rodriguez*, 705 F.3d at 214–15.

We conclude that a violation of § 215.52(1) "naturally involve[s] a person acting in disregard of the risk that physical force might be used against another in committing [the] offense." *See Leocal*, 543 U.S. at 10. This is true even when the resulting injury is committed recklessly rather than intentionally. To violate the statute one must cause physical injury to a victim for whose benefit an order of protection has been previously issued against the defendant. The very fact that the defendant must knowingly flout a court order to violate § 215.52(1) increases the likelihood of force in the commission of aggravated criminal contempt. The nature of the flouted order further highlights the risk of force. An order of protection in New York is issued only after a previous complaint by the victim or the commission of some "family offense," a term which refers to a wide range of offenses, from harassment to strangulation. *See* 2 NY Law of Domestic Violence § 6:9 (3d ed.); *see also* N.Y. Fam. Ct. Act § 812 (McKinney). Section 215.52(1) also applies when the

defendant violates an order of protection issued in another state, more commonly called a "stay-away order." *See* Stay-Away Order, Black's Law Dictionary (9th ed. 2009) (indicating that such an order is also termed "stay-away order of protection"). In general, such orders are issued "[i]n a domestic-violence case" and "forbid[] the defendant to contact the victim." *Id.* These elements—a discordant history between the victim and the defendant leading to a court order of protection, which the defendant knowingly violates—underscore our conclusion that a violation of § 215.52(1), by its nature, entails a high probability that physical force will be used.

This conclusion is supported by our opinion in *United States v. Espinoza*, in which we held that the Texas offense of assault constituted a violent felony under the Armed Career Criminal Act ("ACCA") when committed recklessly. 733 F.3d 568, 574 (5th Cir. 2013), *petition for cert. filed* (Dec. 13, 2013) (No. 13-7909). A violation of the statute at issue in *Espinoza* required that the defendant "intentionally, knowingly, or recklessly cause[] bodily injury to another." Tex. Penal Code Ann. § 22.01(a)(1). It did not require the use of physical force to achieve the injury. *See id.* There, we recognized the connection between injury and the use of force, explaining that "[a] conviction under § 22.01(a)(1) can be achieved if, and only if, a violent, physical confrontation between at least two people leads to bodily injury." *Espinoza*, 733 F.3d at 574. Moreover, we analogized the Texas offense to burglary "because reckless assault can end in confrontation leading to violence" and held that, "[b]ecause reckless assault creates, at a minimum, a similar degree of danger as burglary, . . . it is a violent felony." *Id.* at 573, 574 (internal quotation marks omitted). The holding in *Espinoza* that the Texas offense of reckless assault was "purposeful, violent, and aggressive," *id.* at 573 (internal quotation marks and citation omitted), places reckless assault within the

category of "crimes that, while capable of being committed without the use of physical force, always entail a substantial risk that physical force . . . may be used." *Rodriguez,* 705 F.3d at 213 (internal quotation marks omitted).

Section 215.52(1) has been described by New York courts as "intentional or reckless assault in the third degree," elevated from a class A misdemeanor to a class D felony because "it is committed in violation of an order of protection against a person for whose protection the order was issued." *People v. Huck,* 767 N.Y.S.2d 555, 556 (N.Y. App. Div. 2003) (internal quotation marks omitted). Assault in the third degree occurs when, "[w]ith intent to cause physical injury to another person, [the defendant] causes such injury" or when the defendant "recklessly causes physical injury to another person." N.Y Penal Law 120.00(1) & (2). This language is very similar to the elements of the Texas reckless assault statute that we concluded in *Espinoza* is "purposeful, violent, and aggressive." 733 F.3d at 573. Moreover, we note that aggravated criminal contempt entails a more serious and apparent risk of force than ordinary assault by virtue of the inclusion of a previously issued order of protection as one of the elements. Thus, we conclude that a violation of § 215.52(1) creates "a similar degree of danger as burglary"—the exemplary § 16(b) crime. *See Leocal* 543 U.S. at 10.

We note that the ACCA's focus is on the risk of physical injury to a victim, § 924(e)(2)(B), while the focus of § 16(b) is on the risk that physical force will be employed in the course of committing the offense. However, we have previously looked to the ACCA in deciding whether offenses are crimes of violence under § 16(b). *See, e.g.*, *Sanchez-Ledezma*, 630 F.3d at 450; *United States v. Echeverria-Gomez*, 627 F.3d 971, 976–77 (5th Cir. 2010) (per curiam); *Perez-Munoz v. Keisler,* 507 F.3d 357, 362–64 (5th Cir. 2007).

In sum, we hold that a violation of subsection (1) of New York's aggravated criminal contempt statute, § 215.52(1), is a crime of violence pursuant to § 16(b).    Therefore, it constitutes an "aggravated felony" warranting the application of an eight-level sentence enhancement.

## III.

For the foregoing reasons, we AFFIRM the judgment and sentence imposed by the district court.